IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| EMILY WALKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:12CV640-WKW |
| ) | |
| THE MONTGOMERY PUBLIC ) | |
| SCHOOL SYSTEM, ) | |
| ) | |
| Defendant. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Emily Walker, proceeding *pro se*,[1] brings this action against her employer, the Montgomery Public School System. Plaintiff alleges that defendant took various adverse employment actions against her due to her age, race, and gender in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"),[2] Title VII of the Civil Rights Act of 1964, and, presumably, 42 U.S.C. § 1981. (See Compl. [Doc. # 1] at ¶¶ 7-9). Plaintiff also alleges that defendants retaliated against her in violation of the ADEA and Title VII. (See id. at ¶¶ 11-15).

---

[1] Although plaintiff signed her complaint and submitted it *pro se*, it appears it may have been prepared by someone other than plaintiff in a different case and converted for use in this case. For example, the complaint uses opposite gender pronouns when referring to the plaintiff. See Compl. [Doc. # 1] at ¶ 7 ("and that differential treatment was knowingly, intentional, purposeful, and was on his race, black"). Elsewhere, the complaint appears to reference an entirely different plaintiff. Id. at ¶ 15 ("Because of defendant's discriminatory and retaliatory actions, Vickers has suffered injury."). If plaintiff had actually drafted her complaint, it is unlikely that she would mistake her own name in stating her allegations.

[2] Plaintiff's complaint does not reference the ADEA, but, because Title VII of the Civil Rights Act of 1964 does not address discrimination on the basis of age, see Gen. Dynamics Land Sys. v. Cline, 540 U.S. 581, 586-87 (2004) ("Congress chose not to include age within discrimination forbidden by Title VII . . . .")), the court liberally construes plaintiff's allegations of age discrimination as stating a claim pursuant to the ADEA.

Plaintiff further claims, presumably pursuant to § 1981 or 42 U.S.C. § 1983, that defendant violated her right to equal protection through various actions related to her employment. (See id. at ¶¶17-18, 20-21). Plaintiff also appears to allege, presumably pursuant to 42 U.S.C. § 1983, that defendant violated her right to due process. Finally, plaintiff asserts state law claims against defendant, including breach of contract and retaliation, in violation of Alabama Code § 16-24B-9. (See id. at ¶¶ 23-24). This action is presently before the court on defendant's motion for summary judgment [Doc. # 23], filed on February 7, 2013. Although she was given an opportunity to respond to the motion (see Order [Doc. # 25]), plaintiff has failed to do so.[3] Upon consideration of the motion, the court concludes that it is due to be granted.

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact. Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993). In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof at trial," summary judgment shall be granted.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the "depositions, answers to interrogatories, and admissions

---

[3] In its order setting the deadline for plaintiff's response to the present motion, the court advised plaintiff of the requirements for responding to a motion for summary judgment and noted that, if she is unable to present evidence of facts essential to her opposition, she must file an affidavit or declaration explaining why she is unable to do so. Order [Doc. # 25, n.3]. Plaintiff has not filed any response to the motion, and has filed no Rule 56(d) affidavit or declaration.

2

> on file," designate "specific facts showing that there is a genuine issue for trial. . . We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56 except the mere pleadings themselves. . . ."

Id. at 324.

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

## BACKGROUND AND STATEMENT OF UNDISPUTED FACTS[4]

Plaintiff was employed as a contract principal by the Montgomery County Board of Education at Harrison Elementary School in Montgomery, Alabama, in the early part of 2011. Affidavit of Veverly Arrington at ¶ 4, ex. A to Def.'s Mot. For Summ. J. [Doc. # 23-5] (hereinafter "Arrington Aff."). In the Spring of 2011, the Board notified plaintiff that it would be closing Harrison Elementary School and that her principal's contract would be canceled due to a "justifiable decrease in the number of positions due to decreased enrollment or decreased funding." Id. Five other contract principals, of varying races, ages, and genders, simultaneously had their contracts either cancelled or non-renewed due to school closings ordered by the Board. Plaintiff administratively appealed the cancellation of her contract in the state courts, which upheld the decision. Id.; Walker v. Montgomery Cty. Bd. of Educ., 85 So.3d 1008 (Ala. Civ. App. 2011). After the cancellation of her contract, plaintiff was restored to her last tenured position of assistant principal, a position which she maintained at the time she filed her complaint. Id. at ¶ 5; Compl.

---

[4] Defendant has presented the affidavit testimony of two witnesses in support of its motion for summary judgment. As a result of plaintiff's failure to respond to defendant's motion for summary judgment she has wholly failed to dispute defendant's assertions of material fact via those witnesses, as required by the Federal Rules. See Fed. R. Civ. P. 56(c)(1). This failure to "properly address another party's assertion of fact" enables the court to consider defendant's factual assertions as "undisputed for purposes of the motion" and award summary judgment if those undisputed facts "show that the movant is entitled to" summary judgment. Fed. R. Civ. P. 56(e) & (e)(2)-(3). Thus, while the court must view the facts in the light most favorable to plaintiff, it considers defendant's factual assertions as undisputed for purposes of the motion for summary judgment and relies upon those assertions in recounting the factual background. Moreover, plaintiff's failure to respond is especially problematic in the context of the court's consideration of the majority of her claims because, as discussed further below, those claims are to be resolved employing a burden-shifting framework which ordinarily requires the plaintiff to rebut defendant's explanations for its employment decisions affecting plaintiff by showing that defendant's justifications are mere pretext for unlawful discrimination or retaliation. To the extent that plaintiff may be required to show pretext in this case, her failure to respond is likely dispositive.

[Doc. # 1] at ¶ 2.

Plaintiff alleges that she subsequently was denied promotion to various administrative positions or principal vacancies at other schools, and that such positions were awarded to "some white employees, some male employees, and employees who were under 40 years old." Id. at ¶ 6. She also claims that she "received adverse employment action because she contested the action of the MPS in non-renewing her contract." Id. at ¶ 11. Plaintiff's complaint does not expressly describe what adverse employment actions were taken against her, other than the cancellation of her contract and the failure to promote her to an unspecified number of administrative or principal positions. Nor does plaintiff specifically allege any retaliatory action taken against her other than, presumably, the failure to promote her. Plaintiff's EEOC charges of discrimination, which she did not attach to her complaint but which were provided by defendant, more fully describe the discrete incidents which plaintiff alleges constitute discriminatory actions against her. See Exs. C & D to Def.'s Mot. For Summ. J. [Doc. # 23-6, 23-7]. The court will rely upon these documents and defendant's other submissions in describing plaintiff's claims and recounting the undisputed facts.

The first failure-to-promote referenced by plaintiff in her initial EEOC charge related to a position described as "SIG education specialist," which plaintiff was denied in June of 2011. 11/8/11 EEOC Charge, ex. C to Def.'s Mot. For Summ. J. [Doc. # 23-3] at 4. Plaintiff appears to infer discrimination based upon age or gender because "a younger man, Dwight Brooks, was selected for the position even though [she had] more education and experience than he does." Id. However, it is undisputed that Brooks, an African-American male over the age of 40, previously held the SIG Education Specialist position before a reduction-in-force required the Board to open the position to tenured personnel affected by the reduction-in-force. Arrington Aff. ¶ 6. Because plaintiff's tenured

5

position as assistant principal "is a lower classification than an educational specialist," id., she was not able to "bump" or "displace" Brooks from the position but was instead required to compete with him and others for the position. Brooks was ultimately rehired in the position because he had already served in that position over a year, thereby accumulating valuable experience in that position, and had also previously served as a contract principal from 2004-2010, the highest level of experience obtained by plaintiff. Id. at ¶ 7; id. at ¶ 8 ("Brooks was re-appointed to his position because he was only non-renewed due to the provisions of the Board's RIF policy. There was no displaced tenured educational specialist to bump Brooks from his position so he was re-appointed.").[5]

Plaintiff's EEOC charge next refers to a chart she attached as an exhibit which "shows some of the positions for which I have been rejected." 11/8/11 EEOC Charge, ex. C to Def.'s Mot. For Summ. J. [Doc. # 23-3] at 4. However, the EEOC charge provided to the court as an exhibit to defendant's motion does not include this chart, and because plaintiff does not separately describe these positions in her complaint, or at least provide her EEOC charge and exhibits, the court is simply unable to discover, much less assess, which positions plaintiff believes she was discriminatorily denied except to the extent defendant has discussed specific positions in the Arrington affidavit. In that regard, Arrington refers to the principal's position at Chisolm Elementary School for which plaintiff applied in the latter portion of 2011. Arrington states that

---

[5] Plaintiff does not refer to the other SIG Education Specialist position which was also non-renewed and re-filled at the time of the reduction-in-force. This position was held by Sherlisa Barnes – like plaintiff, an African American female over the age of 40 – prior to the reduction in force. Arrington Aff. at ¶¶ 6-7. Like Brooks, Barnes was rehired for the position. Thus, in both instances the Board non-renewed, opened, and then refilled an SIG Education Specialist position in the same manner and for the same reasons, but in only one of the two did the Board's action provide a comparator for use by plaintiff in a discrimination suit.

plaintiff did not finish in the top half of applicants initially screened[6] for the position and, therefore, did not interview with the Board's selection committee. Arrington Aff. at ¶ 12. The position was eventually awarded to Holly Thursby, a white female who is older than plaintiff. Id. at ¶¶ 13-14. Thursby had placed in the top three of the initial screening of applicants, was interviewed by the selection committee, and was recommended by the Superintendent, an African American female over the age of 40, for the position. Id. at ¶ 12. Arrington testifies that Thursby was the most qualified for the position because, in addition to her performance during interviews, she had served as a principal for seven years under the Board, had served as a principal in Georgia for over fourteen years, had served nine years as an assistant principal, and had been a teacher for many years. Id.

Arrington next discusses the principal's position at Wares Ferry Road Elementary School. A panel consisting of four African American and two white administrators conducted interviews of applicants and ranked plaintiff fifteenth of sixteen applicants. Id. at ¶ 15. The position was eventually awarded to a white male applicant, over the age of forty, who placed first among the interviewed candidates. Id.

Apart from these specific instances of alleged discriminatory failure-to-promote, plaintiff's EEOC charge only vaguely alleges a number of incidents or actions against the Board and others, including the following:

> (1) retaliation against me as evidenced by un-warranted write up by my superintendent for issues related to March 23, 2011; (2) disparate treatment of females in the terms and conditions of their employment as evidenced by requirement that female [remain] assistant principals while males are not required to remain as Assistant Principals; (3) disparate treatment of females in the terms and conditions

---

[6] As Arrington describes it, as the Assistant Superintendent of Human Resources, she conducted initial screening of applicants for positions like those sought by plaintiff. Arrington Aff. at ¶ 11. This process included a "verbal interview and a timed writing submission." Id. at ¶ 12.

of their employment as evidenced by requirement in the fall of 2011 that male assistant principals were allowed to be promoted to principalships while female assistant principals were required to remain as assistants; (4) implementation of employment practices favoring male principals in promotions; (5) retaliation against me based upon my testimony given in hearing in 2011 in favor of a female employee alleging respondents' wrongful conduct against me; (6) actions of respondents, alone and in concert with others, in violation of the provisions of Civil Rights (OCR) laws, that place my school and employment in jeopardy for non-compliance in the fall of 2011; (7) retaliation against me as evidenced by purported findings of refusal to rehire as a principal; (8) on-going and continued attempts by respondents, Holley Thursby and Cindy McKenzie (the females selected for two positions which I filed the instant charge) to undermine my ability to perform my job and comply with all state and federal regulations including, but not limited to, records and responsibilities related to the federally funded and supervised programs at my school and within the school system; (9) discrimination against me based upon age in the selection and hiring of Holley Thursby; and (10) discrimination against me based upon race in the hiring and selection of Holley Thursby as well as Edward Drozdowski, both of whom are Caucasian.

1/27/12 EEOC Charge, Ex. D to Def.'s Mot. For Summ. J. [Doc. # 23-4] at 4-5. Many of these additional allegations are cumulative of those stated by plaintiff regarding the failure-to-promote claims already discussed. To the extent they are not, defendants assert that (1) "The Superintendent has never issued a 'write-up' to Walker before or after November 10, 2011." (Arrington Aff. at ¶ 16); (2) there is no policy or practice forbidding females from ascending to principal positions in favor of males and, in fact, at least two women were rehired as principals after their contract principal positions were eliminated in the reduction-in-force which affected plaintiff (Id. at ¶ 17); and (3) that no assistant principals, male or female, were promoted to principal's positions in the Fall of 2011 (Id. at ¶ 18).[7]

---

[7] As to plaintiff's remaining allegations in the EEOC charge, she has failed to describe sufficiently any alleged retaliatory conduct committed by defendant other than the failure to award her one of the principal or administrative positions for which she applied. Nor does plaintiff describe what "actions" by defendant somehow "place[d her] school and employment in jeopardy for non-compliance in the fall of 2011." Likewise, plaintiff fails to describe how any alleged actions by
(continued...)

**DISCUSSION**

Plaintiff groups her causes of action into the following categories: "Federal Claims: Race Discrimination, Gender Discrimination, Age Discrimination, And Retaliation;" "Selective and Unequal Treatment/Denial of Equal Protection of the Law;" "Denial of Due Process of Law;" and "Pendent State Claims: Count–Breach of Contract." The court will examine plaintiff's claims in the order they are presented in the complaint.

**I.    Discrimination Claims**

Plaintiff first claims that she was subjected to adverse employment actions, including the cancellation of her contract and failure to promote her to other positions, because of discrimination based upon her race, gender, and age. Under Title VII, it is unlawful for an employer to discriminate against an employee on the basis of her race or gender with respect to the terms and conditions of her employment. 42 U.S.C. § 2000e-2(a)(1). The McDonnell Douglas/Burdine[8] framework was established by the Supreme Court for evaluating a Title VII plaintiff's claims of discrimination against an employer where, as here, there is no direct evidence of discrimination. See Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997). The plaintiff must first make out a *prima facie* case of discrimination. Burdine, 450 U.S. at 252-53; Walker v. Mortham, 158 F.3d 1177, 1183 (11th Cir.1998); Combs, 106 F.3d at 1527-28. "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee.

---

[7](...continued)
Thursby or McKenzie could "undermine [her] ability to perform [her] job and comply with all state and federal regulations" or how such conduct, even if true, is related to her discrimination suit against the Board.

[8]    McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).

If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." Id. (quoting Burdine, 450 U.S. at 254); Walker, *supra*. To establish a *prima facie* case of employment discrimination, plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) similarly-situated employees outside of her protected class were treated more favorably than she. Maynard v. Bd. of Regents of Div. Of Universities of Florida Depts. of Educ. ex rel. Univ. of South Florida, 342 F.3d 1281, 1289 (11th Cir. 2003).

If the plaintiff establishes a *prima facie* case, the employer has the burden of producing "legitimate, non-discriminatory reasons for the challenged employment action." Combs, 106 F.3d at 1528 (citing McDonnell Douglas, 411 U.S. at 802). "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Combs, 106 F.3d at 1528 (quoting Burdine, 450 U.S. at 257). If the employer articulates a legitimate, nondiscriminatory reason for its decision, the mandatory inference of discrimination arising from the *prima facie* case is destroyed. Walker, 158 F.3d at 1184. The plaintiff must then produce evidence "including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Combs, 106 F.3d at 1528. A plaintiff may establish pretext by producing evidence that reveals "'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" Springer v. Convergys Customer

10

Management Group, Inc., 509 F.3d 1344, 1348 -1349 (11th Cir. 2007) (quoting Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004)). "However, a reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" Id. (citing Brooks v. County Comm'n of Jefferson County, 446 F.3d 1160, 1163 (11th Cir.2006) (emphasis in original)).[9]

Under the Age Discrimination in Employment Act ("ADEA"), it is unlawful for an employer to discriminate against an employee who is at least forty years old because of his or her age. 29 U.S.C. §§ 623(a)(1), 631(a). In general, age discrimination claims under the ADEA are evaluated pursuant to the same burden-shifting framework applied to Title VII cases under McDonnell Douglas. Sims v. MVM, Inc., 704 F.3d 1327, 1332-33 (11th Cir. 2013).

As set forth above, plaintiff's complaint wholly fails to allege specifically which positions she applied for and was denied, and who ultimately received such positions. Because plaintiff has not provided the court with information better explaining her claims, including a response to defendant's motion for summary judgment or a motion for summary judgment of her own, the court is unable to conclude even that she has established a *prima facie* case of discrimination. To the extent that defendant has provided additional information about some of the specific positions for which plaintiff applied, and further assuming that plaintiff at least has established a *prima facie* case of discrimination based upon age, race, or gender regarding those positions, defendant has stated legitimate, nondiscriminatory reasons for its decisions not to promote plaintiff, including her objectively inferior qualifications and her inferior performance and ranking during initial screening

---

[9] In some cases, proof that an employer's asserted justification is false, when coupled with the evidence establishing the plaintiff's *prima facie* case, is sufficient to permit an inference of discrimination. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000).

interviews. Even if defendant's reasons hinge on subjective criteria such as her performance in job interviews, defendant's justifications are no less legitimate and non-discriminatory than if they were based upon objective criteria. See Chapman v. AI Transport, 229 F.3d 1012, 1033-34 (11th Cir. 2000) (subjective assessment of qualifications, including those normally assessed during an interview, "can be just as valid as objective reasons"). In any event, in failing to respond to defendant's motion, plaintiff has simply failed to demonstrate any genuine dispute of material fact as to whether defendant's proffered reasons for its employment decisions affecting plaintiff, whether objective or subjective, are pretext for discrimination. Accordingly, defendants are entitled to summary judgment on plaintiff's claims of discrimination.

**II.     Retaliation Claim**

Plaintiff also claims that she was retaliated against because she opposed defendant's actions in cancelling her contract. No matter the asserted statutory authority for plaintiff's claim of retaliation, it is subject to the same standard of review.

> Title VII and the ADEA prohibit retaliation against an employee because she has opposed any practice made unlawful under the relevant statutes or has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. 42 U.S.C. § 2000e–3(a); 29 U.S.C. § 623(d). To establish a prima facie case of retaliation under Title VII or the ADEA, a plaintiff must show that (1) she engaged in statutorily-protected activity, (2) she suffered a materially adverse action, and (3) some causal relationship existed between the two events. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir.2002). We have adapted the principles of law applicable to Title VII retaliation cases to retaliation claims under the ADEA. Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir.1993).

Bailey v. City of Huntsville, 2013 WL 1775445, *2 (11th Cir. April 25, 2013) (unpublished decision). This same standard applies to claims of retaliation predicated on § 1981. Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1257-58 (11th Cir. 2012). As with plaintiff's

discrimination claims, to the extent that defendant offers a legitimate, non-retaliatory reason for any adverse action about which she complains, the burden shifts to plaintiff to show that defendant's proffered reasons are pretext for retaliation. Crawford v. Carroll, 529 F.3d 961, 976 (11th Cir. 2008).

As stated above, the only claim of retaliation that may be inferred from the complaint and other available materials is plaintiff's contention that she was not promoted to any of the positions for which she applied as retaliation for her actions in contesting the closure of her school and cancellation of her contract.[10] However, as discussed in relation to plaintiff's discrimination claims, defendant has articulated legitimate, non-retaliatory justifications for its decisions not to promote plaintiff, and plaintiff has failed to demonstrate any issue of material fact as to whether defendant's justifications constitute pretexts for retaliation. Accordingly, defendant is entitled to summary judgment on plaintiff's retaliation claims.

### III. Equal Protection Claim

Plaintiff appears to allege that she was "retaliated against" because of her "exercising her right to contest the action of" defendant, and that this amounted to "selective enforcement" and violated her "constitutional rights secured by the [E]qual [P]rotection Clause of the federal Constitution." Compl. [Doc. # 1] ¶¶ 17-18. In general, the Equal Protection Clause prohibits a governmental entity from treating similarly situated persons differently. Campbell v. Rainbow City,

---

[10] Plaintiff's allegation in her amended EEOC charge that she was unjustifiably "written-up" by the Superintendent "for issues related to March 23, 2011," 1/27/12 Amended EEOC Charge, ex. D to Def.'s Mot. For Summ. J. [Doc. # 23-4] at 4, is both vague and conclusory. Moreover, plaintiff has failed to show that such a write-up constitutes a materially adverse employment action and, therefore, has failed to establish a *prima facie* case of retaliation with respect to any such write-up. Finally, defendant flatly denies that any write-up occurred, Arrington Aff. at ¶ 16, and plaintiff has failed to provide any evidence in support of her claim.

Ala., 434 F.3d 1306, 1313 (11th Cir. 2006). To the extent that plaintiff does present an equal protection "selective enforcement" claim in alleging that defendant targeted her for adverse employment action, plaintiff must show that (1) she was "treated differently from other similarly situated individuals, and (2) that Defendant unequally applied a facially neutral [law, policy, custom, or contractual term] for the purpose of discriminating against" her. Id. at 1314. In effect, plaintiff presents a "class of one claim," in which she asserts that "'she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Id. (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)).

As recounted above, plaintiff has largely failed, on her own, to indicate specifically how she was treated differently from other similarly-situated persons. To the extent that plaintiff identified in her EEOC charges specific instances in which she suffered some material adverse employment action such as cancellation of her employment contract or failure to promote her to other positions, plaintiff has simply failed to indicate that any policy or practice was employed by defendant for the purpose of discriminating against her. Indeed, as previously stated, defendant has plainly articulated a rational basis for its employment actions related to plaintiff, and she has failed to identify any evidence demonstrating a genuine dispute of material fact about the basis for defendant's actions. Accordingly, defendant is entitled to summary judgment on plaintiff's equal protection claims.

**IV.    Due Process Claim**

Plaintiff's due process claim reads as follows:

> There is a direct causal link between policy or custom and the constitutional deprivation suffered by the plaintiff. [The Superintendent] was executing the MPS' illegal policy and custom on the non-renewal of principal's contracts, and in so doing inflicted injury to the plaintiff. MPS acted in a arbitrary manner in enforcing its policy.

Compl. [Doc. # 1] ¶ 20. Plaintiff does not clarify whether her claim alleges a violation of her procedural or substantive due process rights. The Eleventh Circuit has addressed the distinction between procedural and substantive due process claims.

> The Due Process Clause of the Fourteenth Amendment provides substantive due process protection, a violation of which is actionable under 42 U.S.C. § 1983. Substantive due process only protects against deprivations of fundamental rights. Fundamental rights are those created by the Constitution. Property interests are not fundamental rights because they are created and defined by an independent source, such as state law. Thus, where a substantive due process claim is predicated on a non-legislative deprivation of a state-granted and defined property right, no substantive due process claim is viable. This is so even where the plaintiff alleges that the government, acting in a non-legislative capacity, acted arbitrarily and irrationally.
>
> A substantive due process claim predicated on arbitrary and irrational deprivation of a property interest should be treated as a procedural due process claim. With respect to deprivations caused by arbitrary and irrational action, due process is satisfied when "proper procedures are employed." The proper procedures at issue are the same procedures that are required under the procedural due process claim. These claims typically focus on whether government can take away property without affording its owner adequate notice and an opportunity to be heard.

Sanders v. Henry County, Ga., 484 F. App'x 395, 398 (11th Cir. 2012) (citations omitted) (unpublished decision). Because plaintiff's claim at most alleges "arbitrary" action on the part of defendant which affected her presumed property interest in her employment contract, she appears to assert only a procedural due process claim. "To analyze a procedural due process claim, a court examines: (1) whether there is enough of a protectable property right at stake; (2) the amount of process that is due for that protectable right; and (3) the process actually provided." Id. at 397 (citing Greenbriar Vill., L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1264 (11th Cir. 2006)).

Plaintiff does not specifically allege how her procedural due process rights were violated. The amount of "process" to which she was due before she could be deprived of any property interest in her employment contract is governed by state law, which is specifically referenced in the contract

itself. See 9/29/2009 Principal Employment Contract at § 6(b), ex. 1 to Arrington Aff. [Doc. # 23-5] ("Cancellation of this contract shall be in accordance with the Teacher Accountability Act, *Ala. Code § 16-24B-1, et seq.*"). The reasons for cancellation of a principal's contract are clearly set out in the contract, and are identical to those listed in the statute. Id. Specifically, plaintiff's contract was canceled due to a "justifiable decrease in the number of positions due to decreased enrollment or decreased funding." See 3/24/2011 Letter from Thompson to Walker, ex. 1 to Arrington Aff. [Doc. # 23-5]; see also Ala. Code. § 16-24B-3(e)(1)g. As stated above, plaintiff availed herself of the procedural protections afforded under state law. Walker, 85 So.3d at 1011 ("As was her right, *see* § 16-24B-3(e)(2)b., Walker requested an expedited evidentiary hearing before the Montgomery Circuit Court."). After the expedited hearing was conducted and the Circuit Court upheld the Board's decision to cancel her contract, plaintiff appealed to the Alabama Court of Civil Appeals, which affirmed the Circuit Court. Id. at 1016. Plaintiff does not allege any procedural infirmity with the hearing or appellate procedures in which she participated, such that she was precluded from vindicating any property interest, or otherwise describe any alleged due process violation. Because plaintiff was afforded all of the process due to her under Alabama law, including full notice and an opportunity to be heard, she has failed to establish any genuine dispute of material fact regarding whether her due process rights were violated. Defendant is entitled to summary judgment on plaintiff's due process claim.

**V.     State Law Claims**

Under the heading "Pendent State Claims," plaintiff purports to allege state law claims for breach of contract and retaliation pursuant to Ala. Code. § 16-24B-8. Compl. [Doc. # 1] ¶¶ 23-24. As defendant argues, see Def.'s Mem. in Supp. of Mot. For Summ. J. [Doc. # 24] at 41-42,

16

plaintiff's state law breach of contract and retaliation claims are precluded by *res judicata* due to the prior state court litigation over the cancellation of her contract. See Mann v. Palmer, 713 F.3d 1306, 1311 (11th Cir. 2013). At the state court evidentiary hearing, the Board was required to prove, "by a preponderance of the evidence, that the cancellation [of her contract] is solely for cause" pursuant to one of the several enumerated provisions set out in the statute and expressly indicated in the contract itself. In this case, the Board premised its action on "a justifiable decrease in the number of positions due to decreased enrollment or decreased funding." In upholding the Board's cancellation of plaintiff's contract on that ground, the court rejected any contention that the cancellation was for any impermissible reason such as discriminatory or personal animus or retaliation. Ala. Code § 16-24B-3(e)(2)b. Because the Circuit Court found that the Board met its burden and the Court of Civil Appeals affirmed that judgment, a court of competent jurisdiction clearly has rendered a decision on the merits which forecloses any claim that plaintiff's contract was breached due to its cancellation, or that such cancellation was the product of retaliation. As a result, plaintiff's state law claims are barred by *res judicata* and defendant is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that defendant's motion for summary judgment (Doc. # 23) be GRANTED.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action. The parties are DIRECTED to file any objections to this Recommendation on or before August 5, 2013. Any objections filed must identify specifically the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. See United States v.

Schultz, 565 F.3d 1353, 1360 (11th Cir. 2009)(citing Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)).  Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

    DONE, this 22nd day of July, 2013.

               /s/ Susan Russ Walker
                SUSAN RUSS WALKER
                CHIEF UNITED STATES MAGISTRATE JUDGE